MAXWELL, J.,
concurring in part and in the result:
¶ 15. I agree the chancellor did not abuse her discretion in denying an extension of time for the Nunnerys to appeal, considering the totality of the circumstances. While I find the Nunnerys did show the necessary excusable neglect, based on our discretionary review, I cannot say the chancellor erred by finding *814 these circumstances were outweighed by the prejudice to the other side that would have arisen if the requested extension had been granted.
Excusable Neglect
¶ 16. The Nunnerys’ counsel made a compelling argument for excusable neglect. While the Mississippi Supreme Court has not addressed whether the illness of a participating lawyer’s family member could lead to “excusable neglect,” other jurisdictions have. For example, in Local Union No. 12004, United Steelworkers of America v. Massachusetts, 377 F.3d 64, 72 (1st Cir.2004), counsel did not timely file' the notice of appeal he had drafted because his infant son had, become extremely ill. In In re Schultz, 254 B.R. 149, 153-54 (B.A.P. 6th Cir.2000), counsel missed the deadline because, during the time to appeal, he "devoted only part-time hours to his solo law practice” while his wife was undergoing chemotherapy for ovarian cancer. And in San Juan City College, Inc. v. United States, 75 Fed.Cl. 540, 541-43 (Fed.Cl.2007), counsel failed to file an appeal because she “became ovér-whelmed by the illness of her father,, the requirements of a caretaker, and the death of her father.” In each of these cases, counsel’s preoccupation with caring for the extremely ill or dying family member was deemed to be excusable neglect. Local Union No. 12004, 377 F.3d at 72; In re Schultz, 254 B.R. at 153-54; San Juan City Coll., 75 Fed.Cl, at 541-43.
f 17. Here, the Nunnerys’ counsel testified he neglected the demands of his law practice, including impending deadlines, while his brother was in the ICU in South Carolina. Though court deadlines are certainly important and missing them has serious consequences — consequences that affect clients’ lives and property interests — ■ extraordinary personal circumstances sometimes arise. And these circumstances may on occasion take precedence over court deadlines — which is the very reason for incorporating “excusable neglect” into Rule 4(g). Though we lack authority to alter the thirty-day jurisdictional time limit of Rule 4, we are often asked to extend the deadlines that are within our control for reasons amounting to excusable neglect. And we have typically been generous in our response.
¶ 18. I also note that I do not share the majority’s concern about the notice of appeal not being filed within the first twenty-one days of the thirty-day period. Of course, this issue would not be before us had the Nunnerys’ counsel filed a notice of appeal within the first three weeks of the notice period, before his brother’s accident. But'under Rule 4(a), a notice of appeal filed on- day thirty is just as valid as a notice of appeal filed on day one. And there may be legitimate reasons why counsel files toward the end of the thirty-day period — including waiting on the client’s permission and financial commitment to pursue an appeal. Settlement negotiations also often occur during this window. So I do not think the fact counsel did not file his notice of appeal as soon as possible precludes finding excusable neglect.
Prejudice
¶ 19. That said, there were other delays by the Nunnerys during the scope of the years-long litigation that were unrelated to the tragic circumstances that prevented counsel from filing a timely notice of appeal. With these delays in mind, the chancellor found the need for finality for the parties trumped the unfortunate circumstances that led to counsel’s asking for an extension.
¶ 20. The chancellor was actually quite sympathetic to the family situation thrust upon the Nunnerys’ counsel. But she balanced this circumstance with the impact her extending the time to appeal would *815 have on the other side. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P., 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (identifying factors to consider when analyzing “excusable neglect,” including the danger of prejudice to the other side and the length of delay and its potential impact on the judicial process). This case involved an emotional family dispute that took years to litigate. And according to the chancellor, there would be no peace for the prevailing family members until this litigation was finally resolved. The chancellor made her final ruling in June 2012. But the Nunnerys immediately filed a post-trial motion that tolled the time to file an appeal. They then let this motion languish on the docket for more than a year. When the chancellor realized this in October 2013, she denied the motion, finally triggering the thirty days to file an appeal.
¶ 21. Thus, it was ultimately the prejudice to the other side — not simply the actions or inactions by the Nunnerys’ counsel — that dissuaded the chancellor from granting an extension. This potential prejudice is what makes this case different from those I have cited in which courts found “excusable neglect” based on the illness of counsel’s family. In those cases, the potential prejudice was minimal. Local Union No. 12004, 377 F.3d at 72; In re Schultz, 254 B.R. at 154; San Juan City Coll., 75 Fed.Cl. at 543. But here the chancellor found the potential prejudice was so great that it warranted not granting an extension.
¶22. I find no abuse of discretion in this decision. The decision'to extend the time to file a notice of appeal is not mandatory upon a showing of. “excusable neglect,” but instead rests within the discretion of the trial court. M.R.A.P. 4(g). Thus, I concur with the result reached by the majority and agree this decision should be affirmed.
GRIFFIS, P.J., BARNES AND FAIR, JJ., JOIN THIS OPINION.