DICKINSON, Presiding Justice,
dissenting: ‘
¶23. I believe that Varas sufficiently demonstrated that the failure to file his clients’ notice of appeal within the proscribed time was due to “excusable neglect,” and I also believe the trial court erred when it denied Varas’s motion for an extension of time to file a notice of appeal. Because the majority holds otherwise, I respectfully dissent,
¶24. As the majority correctly notes, we generally review a trial court’s grant or denial of a motion for an extension of time to file á notice of appeal for an abuse of discretion.[1] But what the majority fails adequately to acknowledge is that, when such decisions are based upon a question of law, we review de novo,[2] And because in this ease we must determine the legal meaning of “excusable neglect,” we are not bound to affirm the trial court’s decision if *755 “we are left with the definite and firm conviction that the lower court committed a clear error of judgment in the conclusion it reached.”[3] Based on the discussion that is to follow, I am convinced that the court below committed a clear error of judgment by finding that Varas had failed to demonstrate excusable neglect, and by denying his request for an extension of time.
¶ 25. First, I believe the trial judge and the Court of Appeals majority were mistakenly persuaded that Varas’s neglect was not excusable because, as the Court of Appeals put it, Varas’s circumstances “were outweighed by the prejudice to the other side that would have arisen if the requested extension had been granted.”[4] So, basically .both the trial judge and the Court of Appeals balanced Varas’s circumstances against prejudice to the other, side.
¶ 26. I note that Rule 4(g) of the Mississippi Rules of Appellate' Procedure makes no mention of prejudice, nor does it specifically require or authorize a trial judge, to apply any balancing test.[5] That said, the majority — correctly in my opinion — directs our trial courts to utilize the balancing test articulated by the United States Supreme Court in its interpretation of the corresponding federal rule when determining what amounts to “excusable neglect.”[6]
¶ 27. On that nóte, I emphasize that, in Pioneer Investment Services Co.,[7] the Supreme Court approved the Sixth Circuit Court of Appeals’ four-prong test: (1)- “the danger of prejudice to- the [nonmovant],” (2) “the length of the delay and its potential impact on. judicial proceedings,” (3) “the reason for the delay, including whether it was within the reasonable control of the movant, and” (4) “whether the movant acted in good faith.”[8]--
¶ 28. Until now, this Court has not had the opportunity to address whether the illness or death of an attorney’s family member constitutes “excusable neglect” within the meaning of Rule 4(g). Federal courts, however, have been confronted with thfe particular issue, and those courts have held that-mnder such circumstances — the “excusable neglect” standard was satisfied, and that an extension of time was warranted.
¶29. In Local Union No. WOOL the First Circuit Court of Appeals affirmed a district court’s grant of a Rule 4(a)(5) motion for an extension of time to file a notice of appeal.[9] In that case, the appellant’s attorney failed to file a timely notice of appeal because he “was preoccupied by the .need to care for his infant son, who was severely ill.”[10] The appellant’s attorney filed the motion for an extension fourteen days after the thirty-day time period had expired.[11] The Court of Appeals, after *756 reasoning that “given the relative brevity of delay, the attorney’s plausible and uncontested explanation for it, [and] the absence of any discernible prejudice,” concluded that the trial court had not erred in granting the appellant’s motion for an extension of time.[12]
¶ 30. Similarly, in San Juan City College, the United States Court for Federal Claims granted a motion for an extension of time to file a notice of appeal, which the appellant filed thirteen days after the appeal period had expired.[13] There, the appellant’s attorney “became overwhelmed by the illness of her father, the requirements as a care taker, and the death of her father.”[14] In granting the motion, the court reasoned that the “danger of prejudice ... is minimal,” and that the “delay is unlikely to. be excessive since plaintiffs counsel has stated that she is prepared to proceed virtually immediately.”[15]
¶31. Considering the factual circumstances and procedural posture in the instant case, I find In re Schultz[16] to be the most persuasive and directly applicable. In Schultz, the debtor’s counsel filed a motion for an extension seven days after the appeal period had expired and argued that he could demonstrate “excusable neglect” because his wife had been “diagnosed for the second time with ovarian cancer and was undergoing chemotherapy.” [17] The attorney had struggled to help his wife cope with “severe side effects from chemotherapy” as she had been “hospitalized several times ... and suffered extreme psychological and emotional distress.”[18] Additionally, he “was the sole caregiver for his wife, accompanying her to medical appointments and chemotherapy treatments ... [and] was responsible for administering her medication,” and as a result, he could devote “only part-time hours to his solo law practice during the appeal period.”[19] The bankruptcy court denied the debtor’s motion for an extension, finding that such circumstances did not constitute excusable neglect.[20]
¶ 32. The debtor’s attorney appealed to a panel for the Sixth Circuit Court of Appeals.[21] In analyzing the issue, the Court reasoned that the attorney “was suddenly and unexpectedly preoccupied with the physical and psychological care of his extremely ill wife during the period in question,” and noted that “other courts have determined that excusable neglect includes sudden death, disability or illness of counsel or the party.”[22] According to the Court, “because of the severity of the illness at issue and the close familial relationship ... the facts of this case are analogous to a situation in which the attorney is the one who is seriously ill.”[23] The Court also emphasized that “there is certainly no finding that the circumstances were ‘within the reasonable control of the *757 movant.’ ”[24] Ultimately, the appellate court reversed the denial of the motion for an extension of time and specifically held that “we are ... left with a ‘definite and firm conviction that the [bankruptcy court] committed a clear error of judgment,”’ and that “the bankruptcy court abused its discretion in determining that the Debtor’s failure to timely file the request for an extension of time to appeal was not attributable to excusable neglect.”[25]
¶ 33. I find compelling the fact that the majority cites the Pioneer test but fails to conduct a thorough analysis, actually applying the factors to the facts of the instant case. Instead, the majority merely points to some concerns espoused by the chancellor that could indicate that she was considering these factors. I am unconvinced.
¶ 34. With the above-discussed cases in mind, and in actually applying the aforementioned four-prong balancing test to the instant case, it seems clear to me that Varas sufficiently demonstrated that his failure to file a timely notice of appeal was due to “excusable neglect.”

A. Danger of Prejudice to the Non- ■ movant

It 35. Both the trial court and the Court of Appeals went astray in their consideration of prejudice. The Court of Appeals erroneously considered the duration of the underlying litigation, noting that it had been going on for years. The prejudice factor requires an analysis of no more than the prejudice occasioned by granting the extension of time. Similarly, the chancellor noted that the litigation “has prolonged through this Court for several years,” and reasoned that she “went to great lengths to allow the litigants to present their cases ... [and she ruled on] numerous motions, hearings, and a very extended trial.”
¶ 36. Prejudice resulting from the duration of the underlying litigation is not what this factor contemplates. Instead, the danger of prejudice to the nonmovant in this context refers only to the potential prejudice that would be caused by the delay of filing the notice of appeal. For example, a prevailing defendant, relying on an appellant’s failure to file a notice of appeal, might commit to other purposes the resources that were available to satisfy a judgment.
¶ 37. But here, when considering this factor in the appropriate manner, I am unable to find any discernible prejudice to Paul and Glenda. Nothing indicates that they relied in any way on an assumption that David and Jené would not pursue an appeal. In fact, it appears to be quite the contrary. While It is true that Varas did not request a hearing for fifteen months after he filed the motion for a new trial, it is noteworthy that Paul and Glenda made no attempt to have the motion resolved. And while it is also true that Paul and Glenda had. no duty to do so, still, the obvious must be considered: If Paul and Glenda truly felt they were being prejudiced by the delay, they certainly could have taken some step to mitigate the prejudice. Instead, as the time passed, they sat silently by without protest.
¶ 38. Furthermore, the record reflects that Varas informed Paul’s and Glenda’s counsel that he “had a tragedy in the family ... and [was] unable to address any circumstances [of the appeal at that time],” so Paul and Glenda certainly were aware that. David and Jené intended to pursue the appeal. Based on these undisputed facts, any prejudice to Paul and Glenda for *758 the delayed notice of appeal was minimal, if at all. And applying the correct analysis, limited to prejudice associated with the delay in filing the notice of appeal, any finding to the contrary would be manifest error, so this factor weighs in favor of a finding of excusable neglect,

B. The Length of the Delay and Its Potential Impact on Judicial Proceedings

¶ 39. This factor also weighs in favor of permitting David and Jené an extension. Varas filed the motion for an extension, of time a mere two days after his brother’s funeral, and approximately nineteen days after the appeal period had expired — very similar to Local Union No. 12001, in which the motion was'filed fourteen days after the appeal period had expired, and San Juan City College, in which the motion was filed thirteen days after the time for appeal had expired. And as Varas made clear at the hearing, David and Jené are ready to proceed with the appeal immediately. The record suggests no adverse impact on judicial proceedings.

C. The Reason for the Delay

¶40. Federal courts agree that ‘“the four Pioneer factors do not carry equal weight; the excuse given for the late filing must have the greatest import.’ ”[26] After careful consideration of this factor, I am of the opinion that it weighs quite heavily in favor of David and Jené.
¶ 41. Varas’s brother was involved in a tragic car accident which left him in a coma in the ICU at a hospital in Green-ville, South Carolina — a long way from Varas’s practice in Mississippi. And, like the movant in Local Union No. 1200k, Varas was “preoccupied by the need” to be with, and care for, his brother, “who was severely ill.” As Varas admitted at the hearing, during this time he “was not paying attention, nor did [he] feel like [he] needed to pay attention to the demands of the law practice during that time.”
¶ 42. Similarly, like the movant in San Juan City College, Varas “became overwhelmed by the illness of [his brother], the requirements as a caretaker [for his brother], and the death of [his brother].” Varas traveled from Mississippi to South Carolina and from South Carolina back to Mississippi for several weeks. During that time, according to Varas, he “became the patriarch [of his family] and was there [in South Carolina] to actually ,.. make the decision whether to let [his] brother pass away or not.”
■ ¶43. And like the movant in Schultz, Varas is a solo practitioner, unable to delegate his work responsibilities - to others during this difficult time. Varas was “suddenly and unexpectedly preoccupied” with the tragic circumstances surrounding his brother’s car wreck and medical condition. And “because of the- severity of the illness and the close familial relationship,” as Var-as’s brother was in a coma in the ICU, I am persuaded by Schultz that “the facts of this case are analogous to a situation in which the attorney [Varas] is the one who is seriously ill.”[27] Further, no one asserts that the circumstances in which Varas found himself were within his control.
*759 ¶44. Simply put, David’s and Jené’s counsel clearly found himself in extraordinary circumstances which were completely beyond his control. This Court sometimes forgets that our extremely high expectations for attorneys do not comport with reality — the reality that attorneys are humans and will sometimes, on rare occasion, be overwhelmed by extraordinary personal or familial circumstances which understandably will take precedence over court-imposed deadlines. I note briefly that the majority takes-issue with, our reliance on Schultz, contending that this case is not helpful because it did “not contemplate the circumstances faced by the - chancellor in the case sub judice.”[28] While this is technically correct, the majority simply misses the point. It baffles me how the majority takes issue with the court in Schultz relying heavily on this prong when that is exactly what courts have been directed to do — as “the excuse given for the late filing must have the greatest' import.’ ” ' [29] Based on the foregoing discussion, I believe that Varas’s reason for the delay was more than sufficient, and consequently, this factor weighs in favor of permitting David and Jené an extension.

D. Whether the movant 'acted in good faith.

¶ 45. Lastly, I consider whether David and Jené acted in good faith. Nothing in the record indicates- anything to the contrary. Neither Paul and Glenda nor the trial court disputed the factual circumstances propounded by Varas. I can hardly conclude that Varas acted in anything but good faith in requesting an extension given the undisputed extraordinary, circumstances in which he found himself. So this factor too, weighs in favor of allowing David and Jené additional time.
¶ 46. After ápplying the Pioneer balancing test to the factual circumstances in the instant case, I am convinced that Var-as’s failure to file a timely notice -of appeal for his clients was due to “excusable neglect,” and that a finding to the contrary, under-the particular facts of this case, was manifest error. I have no doubt that there will be cases in which the Pioneer factors weigh against a finding of “excusable neglect,” but; in my mind, the instant case is simply not one of those cases.
¶ 47. I note briefly how the majority attempts to support its'decision on'the grounds of “equity.” Though I do not quibble with the majority’s reliance on the principle of equity, I seriously question whether the result it reaches is actúally an “equitable” one. The majority states that “a court of equity considers results rather than the means by which they are obtained.” [30] Though I firmly believe in this statement of the law, I fail to see how it supports the majority’s conclusion. The majority’s result here is to deny David and Jené an opportunity to appeal merely because their counsel acted with simple negligence. How can this result be an “equitable” one, especially when that simple negligence was due to a horrific family tragedy which — no one can reasonably dispute — consumed Varas’s world during that time?
¶48. Moreover, I want to emphasize again that the majority, in my opinion, *760 applies an incorrect standard of review. The majority simply finds that the chancellor did not abuse her discretion. If abuse of discretion were truly the applicable standard of review, I might be constrained to agree — but it is not. What constitutes “excusable neglect” is a question of law, which we review de novo.
¶ 49. Based on the foregoing discussion, I would hold that Varas satisfied the “excusable neglect” standard found in Rule 4(g) of our Rules of Appellate Procedure and that the trial court erred in finding otherwise. Consequently, I would reverse the judgments of the Court of Appeals and the trial court and would remand the case to the chancery court with directions that it allow David and Jené additional time to file their notice of appeal.
WALLER, C.J., AND KING, J., JOIN THIS OPINION.

. In re Estate of Ware, 573 So.2d 773, 776 (Miss.1990).

. See In re Schultz, 254 B.R. 149, 151 (6th Cir.BAP2000) (citing In re Hess, 209 B.R. 79, 80 (6th C&.BAP1997)).

. See Pincay v. Andrews, 389 F.3d 853, 858 (9th Cir.2004).

. Nunnery v. Nunnery, 2015 WL 4485648 (Miss.Ct.App. July 21, 2015).

. See M.R.A.P. 4(g).

. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P’ship, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). Our Rule 4(g) is modeled after, Rule 4(a)(5) of the Federal Rules of Appellate Procedure. See M.R.A.P. 4 cmts.

. Pioneer Inv. Servs. Co., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

. Id.

. Local Union No. 12004, United Steel Workers of America v. Massachusetts, 377 F.3d 64, 72 (1st Cir.2004).

. Id.

. Id.

. id.

. San Juan City College, Inc. v. U.S., 75 Fed. Cl. 540, 543 (2007).

. Id.

. Id.

. In re Schultz, 254 B.R. at 149.

. Id. at 152.

. Id.

. /¿.(emphasis added).

. Id.

. Id. at 153.

. Id. at 154 (citing In re Mizisin, 165 B.R. 834 (Bankr.N.D.Ohio 1994) (citing Evans v. Jones, 366 F.2d 772 (4th Cir.1966))).

. Id.

. Id.

. Id. at 155.

. San Juan City College, 75 Fed.Cl. at 542 (citing Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc., 270 F.3d 1, 5-6 (1st Cir.2001)) (quoting Hosp. del Maestro v. Nat’l Labor Relations Bd., 263 F.3d 173, 175 (1st Cir.2001)) (quoting Lowry v. McDonnell Douglas Corp., 211 F.3d 457, 463 (8th Cir.2000)); see also Treasurer, Trustees of Drury Indus., Inc., Health-Care Plan & Trust v. Goding, 692 F.3d 888, 893 (8th Cir.2012); Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 366-67 (2nd Cir.2003).

. See In re Schultz, 254 B.R. at 154.

. Maj. Op. at ¶ 18.

. See San Juan City College, 75 Fed.Cl. at 542 (citing Graphic Commc'ns Int’l Union, Local 12-N, 270 F.3d at 5-6 (quoting Hosp. del Maestro, 263 F.3d at 175) (quoting Lowry, 211 F.3d at 463)); see also Drury Indus., 692 F.3d at 893; Silivanch, 333 F.3d at 366-67(emphasis added);

.Maj. Op. ¶ 17 (citing Hall v. Bowman, 749 So.2d 182, 184 (Miss.Ct.App.1999)) (emphasis added).