**ACTIVE GLASS CORP., Petitioner,**

v.

**ARCHITECTURAL AND ORNAMENTAL IRON WORKERS LOCAL UNION 580, International Association of Bridge, Structural and Ornamental Iron Workers, et al., Respondents.**

No. 93 Civ. 5440 (PKL).

United States District Court, S.D. New York.

Oct. 10, 1995.

Ralph P. Katz, Ardsley, NY, for petitioner.

Edward J. Groarke, Colleran, O'Hara & Mills, Garden City, NY, Robert P. O'Brian, Mineola, NY, Scott A. Weiss, Sapir & Frumkin LLP, White Plains, NY, for respondents.

### MEMORANDUM ORDER

LEISURE, District Judge:

This is an action to compel multi-party labor arbitration and to enjoin a bilateral arbitration between petitioner, Active Glass Corp. ("Active Glass"), and respondents, Architectural and Ornamental Iron workers Local Union 580, International Association of Bridge, Structural and Ornamental Workers, et al. ("Iron Workers"). In an Opinion and Order issued on February 8, 1995 (the "Order"), this Court denied Active Glass's motion to compel multi-party arbitration and granted Iron Workers' cross-motion to compel bilateral arbitration.

Active Glass now moves, pursuant to Rule 4(a)(5) of the Federal Rules of Appellate Procedure, for an extension of time to file its notice of appeal on the grounds of excusable neglect. For the reasons stated below, the motion is granted.

## BACKGROUND

Active Glass is a contractor in the building and construction industry in and around New York City. Iron Workers is a local labor union. Active Glass and Iron Workers were parties to a collective bargaining agreement (the "CBA") and a short term trust agreement according to which Active Glass was obliged to make contributions to employee benefit funds at rates prescribed in the CBA. *See* Order at 4. A dispute arose between the parties as to whether Active Glass had made the requisite contributions. On or about July 13, 1993, Iron Workers served Active Glass with a notice of intention to arbitrate the dispute in accordance with the provisions of the CBA. *See id.* at 3–4. Active Glass sought to stay the labor arbitration demanded by Iron Workers and to compel Iron Workers and other respondents to engage in multi-party arbitration. This Court denied Active Glass's request, and ordered that bilateral arbitration proceed between Active Glass and Iron Workers. *See id.* at 4.

Ralph P. Katz, Esq., Active Glass's counsel ("Katz"), received notice of the Order, promptly informed his client what had transpired, and arranged to meet with the client to discuss the implications of the Order. Before he could meet with his client, however, Katz was diagnosed with cancer and was hospitalized immediately. *See* Affidavit of Ralph P. Katz, Esq., sworn to on March 27, 1995 ("Katz March Aff.") at 1, 3. He underwent chemotherapy and radiation treatment to his brain, and was unable to communicate on the telephone. *See* Affidavit of Ralph P. Katz, Esq., sworn to on April 10, 1995 ("Katz April Aff.") at 2. Katz instructed his secretary, Hedda Nussbaum ("Nussbaum"), to telephone the Clerk's Office "to request certain papers that customarily accompany an appealable paper." *See* Affidavit of Hedda Nussbaum, sworn to on March 27, 1995 ("Nussbaum Aff.") at 1; Katz March Aff. at 5. The Clerk's Office indicated erroneously that the above Order was not an appealable final judgment, and that the requested papers would be sent once a final judgment was filed. Nussbaum made repeated follow-up telephone calls, and was informed each time that the final judgment had not yet been filed. *See id.* at 2.

On March 13, 1995, the thirty-day period to file notice of appeal of the Order expired, and on March 21, Katz received notice that the case was closed. *See* Active Glass Corp.'s Reply in Support of Its Motion for an Extension ("Active Glass Reply") at 4. Katz retained the firm of Richard Greenspan, P.C., on February 21, 1995, to assist with his caseload during the period of his illness, but enlisted Greenspan's services with respect to Active Glass only after March 21, 1995. *See id.* at 2, 4.

The instant petition is one for an extension of time in which to file the notice of appeal pursuant to Rule 4(a)(5). Katz argues that the Clerk's Office's error, combined with his sudden illness, caused him inadvertently to miss the deadline to file a notice of appeal. Respondents argue that Active Glass cannot meet the test for excusable neglect because Katz's error was a mistake of law, and that he was not the only attorney for Active Glass at the time of the March 13, 1995 deadline to file a notice of appeal. Respondents claim that they would be prejudiced if the Court were to grant the petition.

## DISCUSSION

"The district court, upon a showing of excusable neglect ... may extend the time for filing a notice of appeal." Fed.R.App.P. 4(a)(5). The Supreme Court has stated that the term "excusable neglect" contemplates that "courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). Although *Pioneer* refers to "excusable neglect" as it appears in Bankruptcy Rule 9006(b)(1), the Second Circuit has applied its reasoning in construing the same phrase in Rule 4 of the Federal Rules of Appellate Procedure. *See Weinstock v. Cleary, Gottlieb, Steen & Hamilton,* 16 F.3d 501, 503 (2d Cir.1994) (extending *Pioneer* to Fed.R.App.P. 4(a)(5)); *United States v. Hooper,* 9 F.3d 257, 258 (2d Cir.1993) (extending *Pioneer* to Fed.R.App.P. 4(b)).

■ In construing "excusable neglect," *Pioneer* concluded that the determination should be "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1498. In deciding whether to grant a reprieve for "excusable neglect," the Court considers three main factors: (1) the danger of prejudice to the nonmovant, (2) the length of delay and potential impact on judicial proceedings, and (3) the reason for the delay, including whether the movant acted in good faith and whether the circumstances were within the movant's reasonable control. *See id.*

■ As a threshold matter, the Court must determine who neglected filing the notice of appeal. Respondents argue that because Katz retained the Greenspan law firm to help with his cases, the appeal could and should have been timely filed by Greenspan, notwithstanding Katz's incapacitation due to his illness. *See* Respondents', Iron Workers and Iron Workers' Funds, Memorandum of Law ("Iron Workers Mem.") at 2. They thus contend that the excusability or not of Greenspan's neglect is at issue here. Respondents are correct that Katz's illness would not determine the issue if Greenspan was co-counsel for Active Glass throughout. *See Meza v. Washington State Dep't of Social & Health Servs.,* 683 F.2d 314, 315 (9th Cir.1982) (other lawyers in office could have filed notice). *But see Islamic Republic of Iran v. Boeing Co.,* 739 F.2d 464, 465 (9th Cir.1984) (excuse for illness where ill attorney is only attorney responsible for case), *cert. denied,* 470 U.S. 1053, 105 S.Ct. 1755, 84 L.Ed.2d 819 (1985). The retention, through intermediaries, of Greenspan's firm to assist with all of Katz's cases did not specifically add Greenspan as co-counsel to Active Glass on February 21. Only when Greenspan was specifically assigned to assist with Active Glass, with Active Glass's consent, did Greenspan become co-counsel. Active Glass's Reply states that Greenspan was specifically assigned to work on behalf of Active Glass after March 21— after the 30 day period for filing a notice of appeal had expired. *See* Active Glass Reply at 4. Therefore, only Katz's neglect in filing the notice of appeal is relevant to this motion.

■ The first *Pioneer* factor is prejudice to the nonmovant. Respondents argue that they would be prejudiced because they would have to bear the cost of defending an appeal. *See* Iron Workers Mem. at 4. This claimed prejudice, however, does not result from the untimeliness of the appeal; it would result from any appeal. Nevertheless, the Court notes that the "purpose of the timeliness requirements of Rule 4(a)(1) ... 'is to provide a definite point at which, in the absence of a notice of appeal, litigation will come to a close.' " *650 Park Avenue Corp. v. McRae,* 836 F.2d 764, 766 (2d Cir.1988) (quoting *Fase v. Seafarers Welfare & Pension Plan,* 574 F.2d 72, 75 (2d Cir.1978)). To grant an extension departs from the rigid requirements of Rule 4(a)(1), and therefore the Court finds that there is some prejudice to respondents from the loss of finality.

■ The second factor—the length of delay and its potential impact on the judicial proceedings—weighs slightly in favor of granting the extension. Upon learning the case was closed, Katz immediately called a court conference to be held on March 27, 1995, and enlisted Greenspan's aid in representing Active Glass's interests at that conference. *See* Plaintiff's Brief in Support of Its Application for an Extension of Time to File Its Notice of Appeal ("Active Glass Brief") at 3; Katz March Aff. at 4. On April 10, 1995, less than 30 days after the March 13, 1995 deadline for filing a notice of appeal had expired, Greenspan filed the present motion requesting an extension of time to file an appeal. *See* Active Glass Brief at 3. In light of the speed with which Active Glass's counsel addressed the problem of having inadvertently missed the deadline, the Court finds that the momentary delay cased by the late filing of the notice of appeal is insignificant, and would not have a perceptible effect on judicial proceedings.

■ The final factor—the reason for the delay in light of the good faith efforts of the movant and whether the relevant circumstances were within his reasonable control—is the pivotal determinant of "excusable neglect." *See Weinstock,* 16 F.3d at 503. Katz argues that Active Glass is entitled to reprieve because of the particular circumstances which led to the missed deadline: "[T]he excusable neglect in this case is a combination of an error by a member of the Clerk's office and the reaction thereto resulting from my illness." Katz April Aff. at 3. Illness of counsel has been regarded as valid grounds for excusable neglect where "the illness is so physically and mentally disabling that counsel is unable to file the appeal and is not reasonably capable of communicating to co-counsel his inability to file." *Islamic Republic,* 739 F.2d at 465 ("illness involved diarrhea, vomiting, and a five pound weight loss over 36 hours"); *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 96 B.R. 479, 483–84 (D.N.J. 1989) (counsel "had taken medication for her illness, and was too ill to speak ... on the telephone."). The Court finds that Katz's illness, with its accompanying chemotherapy and radiation treatments, readily satisfies the above standard for excusable neglect. Furthermore, Katz's illness was unexpected, *see* Katz March Aff. at 4, and obviously was outside his reasonable control.

Misinformation by the court or its officers has also been recognized as a viable basis for excusable neglect. Although the Second Circuit has noted specifically that ignorance of the law is no excuse, and that the "excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules," *Weinstock,* 16 F.3d at 503, Katz's neglect is distinguishable because it was based, in part, on misinformation by a court official. *See* Katz April Aff. at 5–6. The Second Circuit has stated that "where [an] omission occurs because the party has been misled by action of the court or its officers, such neglect may be excusable." *Mennen Co. v. Gillette Co.,* 719 F.2d 568, 570 (2d Cir.1983). The Clerk's Office led Katz's secretary to believe that her request for papers normally accompanying an appealable paper was premature and that such papers would be sent after a final judgment was filed. *See* Nussbaum Aff. at 2. This misinformation was compounded by Katz's inability to personally follow-up on the Clerk's Office's statements.

Turning to Katz's good faith, the Court notes as a threshold matter that respondents

**1232**

have not brought this into question. On the contrary, Iron Workers state that, other than the question of Katz's retention of Greenspan's services, they "do not contest that Mr. Katz's illness does constitute 'excusable neglect.'" *See* Iron Workers Mem. at 1. Nevertheless, the Court notes that Katz displayed a good faith effort, notwithstanding the gravity of his illness, to comply with the procedural rules by instructing his secretary to telephone the Clerk's Office and asking her to place follow-up calls in order to determine when the final judgment would be entered. *See* Nussbaum Aff. at 1–2. The Court therefore finds that the third *Pioneer* factor weighs heavily in favor of a finding of excusable neglect.

Considering the three *Pioneer* factors together, the Court finds that Katz's failure to file timely a notice of appeal was due to excusable neglect. The prejudice to respondents from granting the extension is relatively slight, the delay in filing the instant application was quite short, and the reason for the delay in light of the good faith efforts of the movant overwhelmingly demonstrates that the neglect was excusable. Accordingly, the Court finds that the failure to file a notice of appeal before March 13, 1995 was due to excusable neglect.

### CONCLUSION

For the reasons stated above, the Court HEREBY GRANTS Active Glass's application for an extension of time to file its notice of appeal pursuant to Rule 4(a)(5).

**SO ORDERED.**