**In re Lupe R. BROWN, Debtor.**

**Lupe R. Brown, Appellant,**

v.

**Michael W. Puerner, Appellee.**

**Bankruptcy No. GL 02–11640.**
**Nos. 1:03–CV–555, 1:03–CV–554.**

United States District Court,
W.D. Michigan,
Southern Division.

Jan. 8, 2004.

that debtor proved that he also made five voluntary payments totaling over $600 during the course of his indebtedness.

Scott A. Chernich, Foster, Swift, Collins & Smith, PC (Lansing), Lansing, MI, for Michael W. Puerner.

## *OPINION*

QUIST, District Judge.

Appellant, Lupe R. Brown (the "Debtor"), appeals from two Bankruptcy Court orders: first, a June 4, 2003, order denying the Debtor's motion to convert his Chapter 7 case to a Chapter 13 case, and second, a June 14, 2003, order denying the Debtor's emergency motion for an extension of time to file a notice of appeal. Now before the Court is a filing titled "Debtors Motion for Reconsideration of Judgement" [sic] (the "Motion for Reconsideration") and an accompanying brief (the "Brief"). The Court construes this motion and brief together to comprise the Debtor's appeal (the "Appeal") of the aforementioned Bankruptcy Court orders. The Chapter 7 Trustee and Appellee, Michael W. Puerner (the "Trustee"), has filed a brief in opposition. For the reasons stated below, the Court will deny the Debtor's Appeal.

### I. *Background*

This matter began when the Debtor, proceeding pro se, filed for relief under Chapter 7 of the Bankruptcy Code on October 17, 2002 (Bankr.Ct. Case No. GL 02–11640). The bankruptcy schedules listed his interest in real estate located on Seminole Drive in Okemos, Michigan. Ever since the inception of this matter, the Debtor has attempted to keep the Trustee from pursuing the Seminole Drive property as an asset of the bankruptcy estate. On May 12, 2003, the Debtor filed a motion to convert his Chapter 7 case to a Chapter 13 case. The Bankruptcy Court denied that motion on June 4, 2003, holding that it was filed in bad faith. As the Bankruptcy Court's opinion notes, "[s]ince seeking bankruptcy protection, the Debtor

has made almost constant attempts to avoid the consequences of chapter 7 bankruptcy—namely, the sale of the Okemos property." (Op. 6/4/2003 at 10.) Throughout the proceedings, the Debtor has repeatedly missed required meetings, failed to cooperate with the Trustee, and generally resisted his obligations under the Bankruptcy Code. (*Id.* at 2–12.) "[T]he Debtor's motion to convert is simply the Debtor's latest attempt to manipulate the bankruptcy process and prevent the sale of the Okemos property." (*Id.* at 10.)

On July 3, 2003, the Debtor filed a tardy notice of appeal to appeal the Bankruptcy Court's June 4, 2003, decision. On July 7, 2003, the Debtor filed an emergency motion to extend the time to file a notice of appeal in which he claimed that the delay was due, among other things, to his declining mental capacity. The Bankruptcy Court denied the motion on July 14, 2003, explaining that "the court is of a firm conviction that the Debtor's neglect is not 'excusable.' The assertions contained in the Debtor's Motion are repetitive and constitute nothing more than a rehash of the matters he previously raised at multiple hearings, on the record, before the undersigned judge." (Order 7/14/2003 at 2.) In addition, the Bankruptcy Court reiterated that "the Debtor lacks good faith in filing this Motion." (*Id.*) On July 16, 2003, the Debtor filed a second emergency motion for extension of time to file a notice of appeal. The Bankruptcy Court did not rule on this second motion. The Bankruptcy Court ordered the transmittal of records on appeal on August 14, 2003, and the records were transmitted to this Court on August 27, 2003.

The Debtor filed the Appeal now before this Court on August 28, 2003, and an accompanying brief on September 12, 2003. These filings challenge the denial of the Debtor's motion to convert his Chapter 7 case to a Chapter 13 case, as well as his motions for extension of time to file a notice of appeal.

## II. *Jurisdiction and Standard of Review*

 A final order of a bankruptcy court may be appealed by right to a U.S. district court under 28 U.S.C. § 158(a)(1). For purposes of an appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 798, 109 S.Ct. 1494, 1497, 103 L.Ed.2d 879 (1989) (citations omitted). "An order denying a motion for extension of time to file a notice of appeal pursuant to Fed. R. Bankr.P. 8002(c)(2) is a final order." *Belfance v. Black River Petroleum, Inc. (In re Hess),* 209 B.R. 79, 80 (6th Cir. BAP 1997).

 In reviewing the decisions of a bankruptcy court, a district court applies a clearly erroneous standard to the bankruptcy court's findings of fact and a *de novo* standard of review to its conclusions of law. *Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. P'ship),* 52 F.3d 127, 130 (6th Cir.1995); *Holly's, Inc. v. City of Kentwood (In re Holly's, Inc.),* 178 B.R. 711, 713 (W.D.Mich.1995). A bankruptcy court's decision to deny a motion for extension of time to file a notice of appeal is reviewed for abuse of discretion. *In re Hess,* 209 B.R. at 80 (citing *Baker v. Raulie,* 879 F.2d 1396, 1399 (6th Cir.1989) and *Marsh v. Richardson,* 873 F.2d 129, 130 (6th Cir.1989)). "A court has abused its discretion if the reviewing court has a definite and firm conviction that the trial court committed a clear error of judgment in the conclusion that it reached based on all of the appropriate factors." *In re Hess,* 209 B.R. at 80 (citations omitted). While acknowledging this standard, the Court of Appeals for the Sixth Circuit has recently

expressed it in another way as well: "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Barlow v. M.J. Waterman & Assocs., Inc. (In re M.J. Waterman & Assocs., Inc.)*, 227 F.3d 604, 608 (6th Cir.2000) (citations omitted).

## III. *Discussion*

The Debtor's Appeal presents two issues: first, whether the Bankruptcy Court abused its discretion by denying the Debtor's motion to extend the time to file a notice of appeal, and second, whether the Bankruptcy Court abused its discretion by denying the Debtor's motion to convert his Chapter 7 case to a Chapter 13 case. The Court resolves the first issue by concluding, after conducting a *de novo* review, that the Debtor failed to show "excusable neglect" in support of his motion for an extension of time to file a notice of appeal. Therefore, the Bankruptcy Court acted within its discretion in denying the motion. With the first issue so resolved, the Court need not reach the second issue on its merits.

Federal Rule of Bankruptcy Procedure 8002(a) states that a notice of appeal must be filed within ten days of the Bankruptcy Court's order. Fed. R. Bankr.P. 8002(a) ("The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from."). The Bankruptcy Court entered its order denying the Debtor's motion to convert on June 4, 2003. The Debtor filed his initial notice of appeal on July 3, 2003, well after the ten day time limit had expired. For this reason, the Bankruptcy Court properly denied Debtor's notice of appeal as tardy.

The Debtor then filed a motion requesting an extension of the time to file a notice of appeal. Federal Rule of Bankruptcy Procedure 8002(c)(2) grants the Bankruptcy Court discretionary authority to extend the time to file a notice of appeal upon a showing of "excusable neglect." Fed. R. Bankr.P. 8002(c)(2) ("A request to extend the time for filing a notice of appeal must be made by written motion filed before the time for filing a notice of appeal has expired, except that such a motion filed not later than *20 days* after the expiration of the time for filing a notice of appeal may be granted upon a showing of *excusable neglect*.") (emphasis added). Due to the July 4 holiday, the 20 day time limit set forth in Fed. R. Bankr.P. 8002(c) expired on July 7, 2003. Because the Debtor filed his motion to extend the time to file a notice of appeal on July 7, 2003, his motion was timely filed.

The question, then, is whether the Debtor made the requisite showing of "excusable neglect." The Debtor argued in his motion for extension of the time to file a notice of appeal that his neglect was excusable due to mental problems for which he had been receiving treatment. In its July 14, 2003, order denying the Debtor's motion, the Bankruptcy Court ruled that "the Court is of a firm conviction that the Debtor's neglect is not 'excusable.'" (Order 7/14/2003 at 2.)

Whether a party has demonstrated "excusable neglect" is a question of law, the resolution of which is subject to *de novo* review. *In re Hess*, 209 B.R. at 80 (citation omitted). Although "excusable neglect" is not defined by the Bankruptcy Rules, the concept has been appropriately characterized as the failure to timely perform a duty due to circumstances which were beyond the reasonable control of the person whose duty it was to perform. *Gilbert v. Suburban Athletic Club (Matter of*

*Dayton Cir. Cts. No. 2)*, 85 B.R. 51, 54 (Bankr.S.D.Ohio 1988) (citations omitted). A determination of "excusable neglect" involves a two-part analysis. First, the Court must determine that the failure to timely file was the result of neglect. Second, the Court must determine whether the neglect was excusable. *Allied Domecq Retailing USA v. Schultz (In re Schultz)*, 254 B.R. 149, 153 (6th Cir. BAP 2000).

■ With respect to the first prong of two-part "excusable neglect" analysis, the Court finds that the Debtor's failure to timely file a motion requesting an extension of the time to file a notice of appeal was the result of neglect. "The ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or closer to the point for our purposes, 'to leave undone or unattended to *esp[ecially] through carelessness.*'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388, 113 S.Ct. 1489, 1494–95, 123 L.Ed.2d 74 (1993) (quoting Webster's Ninth New Collegiate Dictionary 791 (1983)) (emphasis in original). The "neglect" prong is met in this case, as the Debtor "left undone" the filing of the motion. *See In re Schultz*, 254 B.R. at 153 ("[F]ailure to timely file a notice of appeal or an extension of the time to appeal constitutes neglect.").

■ The second prong of the "excusable neglect" analysis—whether the neglect was excusable—requires a more exacting inquiry. "[T]he determination [of what sorts of neglect will be considered 'excusable'] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include...the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 395, 113 S.Ct. at 1498, 113 S.Ct. 1489 (footnote and citations omitted).[1] Most courts addressing the issue in the context of 8002(c) have focused on the reason for the delay. *In re Lang*, No. 01–73897, 2002 WL 484945 at *4 (E.D.Mich. Mar.11, 2002).

In this case, the Debtor contends that the delay was excusable because it was due to his diminished mental capacity. In support of this argument, the Debtor submits an undated letter from Shannon Isaacson, PAC, stating that the Debtor has been under "treatment for psychiatric conditions" since November of 2002. (Motion for Reconsideration, Ex. 2.) Isaacson goes on to say: "It is my belief that his [the Debtor's] medical conditions, for which we have yet to establish a firm diagnosis regardless of diligent treatment and follow-up, interfere with his ability to think clearly and function in a normal capacity. His mental clarity has definitely decreased since I first met him in May of 2001." (*Id.*) In addition, the Debtor submits medical records showing he was hospitalized in the Adult Psychiatric Unit of the Saint Lawrence Hospital in Lansing, Michigan, from August 1 to August 7, 2003. (Motion for Reconsideration, Ex. 4.) A note from Dr. Tatyana Sigal indicates the Debtor's hospitalization was for treatment of major depressive disorder. (Motion for Reconsideration, Ex. 1.)

The Debtor has been acting as his own attorney throughout these proceedings. Accordingly, the Court finds helpful cases

---

**1.** Although the *Pioneer* Court was considering the excusable neglect provision of Fed. R. Bankr.P. 9006(b)(1), Sixth Circuit unpublished opinions indicate that the *Pioneer* standard of excusable neglect applies to Fed. R. Bankr.P. 8002(c) as well. *See, e.g., In re Lang*, 2002 WL 484945 at *4 (E.D.Mich. Mar.11, 2002), citing *Belfance v. Black River Petroleum, Inc. (In re Hess)*, 209 B.R. 79, 80 (6th Cir. BAP 1997).

examining whether neglect is "excusable" when an attorney fails to timely file a motion due to illness or disability. In *Active Glass Corp. v. Architectural and Ornamental Iron Workers Local Union 580*, 899 F.Supp. 1228, 1231 (S.D.N.Y. 1995), the court, applying the "excusable neglect" language of Fed. R.App. P. 4(a)(5), determined that an attorney's unexpected cancer and resulting illness supported a finding of "excusable neglect." The *Active Glass* court cited *Islamic Republic of Iran v. Boeing Co.*, 739 F.2d 464, 465 (9th Cir.1984) ("illness involved diarrhea, vomiting, and a five pound weight loss over 36 hours" and thus was "so physically and mentally disabling that counsel [was] unable to file the appeal"), and *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 96 B.R. 479, 483–84 (D.N.J.1989) (counsel's malady was not "readily foreseeable" and she "had taken medication for her illness, and was too ill to speak...on the telephone"). Another court stated that excusable neglect includes "sudden death, disability or illness of counsel or the party." *In re Mizisin*, 165 B.R. 834, 835 (Bankr.N.D.Ohio 1994).

In *In re Schultz*, 254 B.R. at 155, the Sixth Circuit held that a bankruptcy court abused its discretion in deciding that a debtor's failure to timely file a request for an extension of the time to appeal was not due to excusable neglect. The attorney in that case maintained that he missed the filing deadline because he was suddenly and unexpectedly preoccupied with the physical and psychological care of his extremely ill wife during the period in question. *Id.* at 154. The day before the judgment was entered, the attorney's wife was hospitalized for neutropenic fever, a side effect of her chemotherapy treatment for ovarian cancer, and she remained hospitalized for three days. *Id.* at 152. Thereafter, the attorney was the sole caregiver for his wife, accompanying her to medical appointments and chemotherapy

treatments and administering her medication. *Id.* During the 10–day appeal period, the attorney devoted only part-time hours to his solo law practice. *Id.*

In reviewing the bankruptcy court's decision, the *In re Schultz* court applied the *Pioneer* factors to reach the conclusion that the attorney's neglect was excusable. First, the bankruptcy court had expressly accepted as true the attorney's statements concerning the cause of his neglect, and stated that no good faith issue was presented. *Id.* at 154. Second, there was no finding that the circumstances were within the reasonable control of the movant. *Id.* Third, there was no indication that the failure to timely appeal was a part of a pattern of delay by the movant or the attorney. *Id.* Fourth, the impact of any delay on judicial proceedings caused by extending the appeal time would be slight. *Id.* The court concluded that "[i]n the context of the equitable decision on the attorney's motion for an extension, the extraordinary circumstances presented in this case and the absence of factors supporting denial of the motion required that this motion be granted." *Id.* at 155. Because the court reached a "definite and firm conviction" that the bankruptcy court committed a "clear error of judgment," it found an abuse of discretion. *Id.*

In contrast to the result in *In re Schultz*, the equitable determination based on the *Pioneer* factors in this case leads to the conclusion that the Debtor's neglect was not excusable. First, prior court opinions in this action, along with this Court's own *de novo* review of the facts, suggest solid grounds to doubt the good faith of the Debtor. It appears that the Debtor's neglect was part of his ongoing pattern of obstruction and delay. The Bankruptcy Court based its decision to deny the Debtor's motion to convert his Chapter 7 case

to a Chapter 13 case upon the Debtor's "bad faith and abuses of the bankruptcy process." (Op. 6/4/2003 at 10.) As that Opinion recounts, the Debtor has throughout the history of these proceedings "made almost constant attempts to avoid the consequences of chapter 7 bankruptcy." *Id.* For example, he: significantly undervalued the property at issue; repeatedly failed to appear and testify at required meetings, eventually doing so only under threat of contempt proceedings; failed to timely pay his filing fee; and refused to provide access to the property despite court orders to the contrary. *Id.* In addition, the Bankruptcy Court's later decision to deny the Debtor's motion to extend the time to file a notice of appeal was likewise based in part on the Debtor's bad faith. (Order 7/14/2003 at 2.) The Court suspects, as the Trustee argues, that the Debtor's Appeal now before the Court is simply one more attempt to hinder or delay the disposition of assets and circumvent the bankruptcy process.

Second, the Debtor's alleged mental incapacity does not resemble the sudden, unexpected illnesses that courts have deemed grounds for "excusable neglect." As the Debtor's own submissions to the Court indicate, he was not hospitalized until August 1, 2003, well after the June 14, 2003, deadline for filing a timely notice of appeal. (Motion for Reconsideration, Ex. 1.) While it appears that the Debtor began receiving some form of psychiatric treatment in November of 2002 (Motion for Reconsideration, Ex. 2.), his condition did not hinder him from acting with satisfactory competence since filing his Chapter 7 case on October 17, 2002. Since the inception of this matter, the Debtor had sufficient mental capacity to file a series of motions when doing so served his purpose, and the Court can find no reason to believe that his capacity significantly diminished in the weeks prior to June 14, 2003.

As the foregoing discussion demonstrates, this case, unlike *In re Schultz*, involves several factors strongly weighing against a conclusion that the Debtor's neglect was "excusable." Moreover, any further delay in these proceedings would only serve to prejudice the Trustee and the judicial process. As *Pioneer* instructs, the "excusable neglect" determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." 507 U.S. at 395, 113 S.Ct. at 1498. The Court's *de novo* review of the circumstances in this case leads it to conclude that the Debtor's failure to timely file his motion to extend the time for filing a notice of appeal was not due to "excusable neglect."

## IV. *Conclusion*

For the reasons stated above, the Court concludes that the Bankruptcy Court did not abuse its discretion in denying the Debtor's motion to extend the time for filing a notice of appeal of the Bankruptcy Court's decision denying the Debtor's motion to convert his Chapter 7 case to a Chapter 13 case. Therefore, the Bankruptcy Court's Order shall be affirmed. This case and a related matter, 1:03–CV–554, shall be closed.

An Order consistent with this Opinion shall be entered.

## ORDER

In accordance with the Opinion filed on this date,

**IT IS HEREBY ORDERED** that Appellant's Appeal, consisting of Appellant's Motion for Reconsideration of Judgment (docket no. 6) and Brief (docket no. 7), is **DENIED.**

This case and a related case, 1:03–CV–554, are concluded.