# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CT-00260-SCT

*DAVID GLEN NUNNERY AND JENE' NUNNERY*

*v.*

*PAUL EDWARD NUNNERY AND GLENDA*
*NUNNERY LORD, AS CO-EXECUTOR-*
*EXECUTRIX OF THE WILL AND ESTATE OF*
*JOSEPH L. NUNNERY, DECEASED AND ANNIE*
*LOUISE YOUNG NUNNERY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/2014 |
| TRIAL JUDGE: | HON. DEBBRA K. HALFORD |
| TRIAL COURT ATTORNEYS: | JAMES FREDERICK AHREND |
| | MATTHEW WARREN KITCHENS |
| | GARY L. HONEA |
| | ELBERT EARL HALEY, JR. |
| | DENNIS L. HORN |
| COURT FROM WHICH APPEALED: | PIKE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | DAVID NEIL MCCARTY |
| | JEFFREY A. VARAS |
| ATTORNEYS FOR APPELLEES: | DAVID RYAN BRUHL |
| | JOSEPH M. STINSON |
| | DENNIS L. HORN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 07/21/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The instant case presents a difficult factual situation and outcome.  In the wake of an

attorney's family tragedy, the defendants missed their deadline for filing their notice of

appeal. The chancellor denied the defendants' request to extend the time to file the notice of appeal. We discern no abuse of discretion by the chancellor and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Originating in the Chancery Court of Pike County, the underlying case involves a land dispute among family members. After several years of litigation, the chancellor rendered a final judgment on June 20, 2012. David and Jené Nunnery then retained Attorney Jeffery A. Varas, who promptly filed a motion for new trial. On October 1, 2013—fifteen months after the motion was filed—the chancellor entered an order denying the motion.

¶3. On October 22, 2013, Varas learned that his brother had been in a serious car accident and was in a coma in the intensive care unit ("ICU") at a Greenville, South Carolina, hospital. For the next four weeks, Varas traveled back and forth from Mississippi to South Carolina to be with his family and to deal with what Varas described as "end-of-life medical, financial and emotional decisions" concerning his brother's condition.

¶4. Varas is a solo practitioner whose legal secretary is his wife, so when the family tragedy struck, Varas was unable to delegate his work responsibilities to anyone else. Consequently, he missed filing the notice of appeal in the instant case by the October 31, 2013, deadline.

¶5. Varas and his family made the decision to remove his brother from life support on November 9, 2013. His brother soon passed away and a funeral was held on November 16, 2013.

¶6.    After his brother's funeral, Varas returned to work and, realizing he had missed the deadline to file the notice of appeal, filed a motion on behalf of his clients for an extension of time to file a notice of appeal.  Within this motion, Varas argued as follows:

> During the time for appeal, a close family member of the undersigned attorney was involved in a serious car wreck in South Carolina, was in a comma [*sic*] in intensive care, underwent surgical procedures, and was placed on life support.  These unfortunate events extended for a period of four (4) weeks requiring the undersigned attorney's regular attendance at the Greenville, South Carolina hospital.  On November 9, 2013, the family removed life support and on November 16[, 2013] the funeral was held.
>
> The good-cause excusable neglect for the requested extension is based upon the above stated circumstances which kept the undersigned counsel out of the office for extended periods of time during the past four weeks.  The undersigned is a sole [*sic*] practitioner with his wife as secretary and who traveled with the undersigned.  Such excusable neglect was the result of unforeseen circumstances beyond his control and which interfered with the timely filing of a notice of appeal.

¶7.    At the hearing on Varas's motion, Varas explained that "everything went to heck in a hand basket during that time, Judge," and "I was in a semi-state of shock."  Varas went on to admit "I was not paying attention, nor did I feel like I needed to pay attention to the demands of the law practice during that time."  Varas further characterized the situation as "like being in the twilight zone to be in the intensive care unit like that for that number of weeks."  Varas additionally described how during this time he "became the patriarch [of his family] and . . . had to make the decision whether to let [his] brother pass away or not."

¶8.    Paul Edward Nunnery and Glenda Nunnery Lord ("Paul and Glenda") opposed the motion and argued that the circumstances surrounding Varas's brother's accident, while

3

terrible, did not rise to the level of "excusable neglect." At the close of the hearing, the chancellor ruled from the bench that she was going to deny Varas's motion. In explaining her decision to deny the motion, the chancellor reasoned as follows:

> . . . the Court is indeed sympathetic to Mr. Varas and his personal situation. Likewise, the Court is indeed sympathetic to his client who is involved in a very distasteful, contentious family litigation which has prolonged through this Court for several years.
>
> And having stated that sympathy for both counsel and his client, the Court must go forward to relate that there are other parties' interest to be considered.
>
> The Court takes note that so long as litigation is pending it is a chief detractor from the sanity, the peace that a family should be entitled to.
>
> The plaintiffs in this case, which this Court has tried, were other family members of the proposed appellant. Two of which were his extremely elderly parents.
>
> This Court went to great lengths to allow the litigants to present their cases. There were numerous motions, hearings, and a very extended trial, after which the Court diligently undertook to render a very detailed ruling, and that ruling was entered by the Court on June the 20th of 2012. . . .
>
> And whereas the Court has the most extreme sympathy for counsel and for his personal life situation which occurred in the waning days that this case could have been appealed to the Supreme Court, this Court does not find, considering all things, that this is an appropriate case for extending the time for leave to appeal the case.

¶9. Following this hearing, the chancellor entered an order on January 30, 2014, reflecting her ruling from the bench. In that order, the chancellor specifically found:

> The Defendants have not met their burden of showing that their failure to file a notice of appeal within the time permitted by Rule 4 of the Mississippi Rules of Appellate Procedure was the result of excusable neglect.

4

¶10.    Varas appealed the chancellor's order and the Court of Appeals affirmed with sharp division as to the reasoning. ***Nunnery v. Nunnery***, 2015 WL 4485648 (Miss. Ct. App. July 21, 2015). Presiding Judge Irving, joined by three judges, determined that David and Jené had failed to demonstrate excusable neglect. ***Id.*** at *4. Judge Maxwell, joined by three judges, concurred in part and result with the majority but reasoned that, while David and Jené had met their burden in showing excusable neglect, he could not conclude that the chancellor had abused her discretion in denying the motion because Varas's "circumstances were outweighed by the prejudice to the other side that would have arisen if the requested extension had been granted."

¶11.    We granted David and Jené's petition for a writ of *certiorari* to address whether the chancellor erred in finding that Varas had failed to show "excusable neglect," and whether, as a result, the chancellor erred in denying their motion for an extension of time to file their notice of appeal. We affirm.

**STANDARD OF REVIEW**

¶12.    We review excusable-neglect determinations from our trial courts with a bifurcated standard. The Court has set forth the applicable standard of review as follows:

> The Court applies an abuse of discretion standard to a trial court's findings of fact concerning the existence or lack of good cause or excusable neglect. ***Long v. Mem'l Hosp. at Gulfport***, 969 So. 2d 35, 38 (¶ 5) (Miss. 2007). *We will reverse the trial court's factual determination only when it is not supported by substantial evidence*. ***Id.*** To the extent that the trial court's excusable neglect determination involves the interpretation of legal principles, we will conduct a de novo review. ***Id.***

5

***Clark v. Knesal***, 113 So. 3d 531, 539 (¶ 28) (Miss. 2013) (emphasis added). We have

elsewhere described the standard of review:

> This Court leaves to the discretion of the trial court *the finding of fact on the existence of good cause or excusable neglect* for delay in serving process under Rule 4(h). Where such discretion is abused or is not supported by substantial evidence, this court will reverse. However, where the trial court's judgment involves the interpretation of legal principles, this court will conduct a de novo, or plenary, review of its interpretation, and reverse where it finds the trial court in error. ***Bennett v. McCaffrey***, 937 So. 2d 11, 14 (Miss. 2006). *See also **Montgomery v. SmithKline Beecham***, 910 So. 2d 541, 544–45 (Miss. 2005); ***Holmes v. Coast Transit Auth.***, 815 So. 2d 1183, 1185 (Miss. 2002).

***Long v. Mem'l Hosp. at Gulfport***, 969 So. 2d 35, 38 (¶ 5) (Miss. 2007) (emphasis added).

Two potentially applicable standards of review exist – abuse of discretion and plenary.

When the trial court's decision rests on "precepts of law," the standard is plenary. ***Bennett***

***v. McCaffrey***, 937 So. 2d 11, 14 (¶ 8) (Miss. 2006). On the other hand, when – as is the case

today – the trial judge's decision rests upon an examination of facts, we review for abuse of

discretion and to ensure the decision is supported by substantial evidence. ***Id.*** "Which

standard to apply is a decision to be made on an ad hoc basis." ***Id.*** (citing ***Rains v. Gardner***,

731 So. 2d 1192, 1198 (Miss. 1999)). The dissent's insistence that what "constitutes

'excusable neglect' is a question of law, which we review *de novo*," (Dis. Op. at ¶ 24), is an

oversimplification and not accurate.

¶13. Black's Law Dictionary defines "abuse of discretion" as "An appellate court's

standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, illegal,

or unsupported by the evidence." *Abuse of Discretion*, Black's Law Dictionary (10th ed.

2014). The reviewing court should not reverse a discretionary finding by the lower court unless it comes to a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of relevant factors." *Plaxico v. Michael*, 735 So. 2d 1036, 1039 (¶ 11) (Miss. 1999) (quoting *Cooper v. State Farm Fire & Cas. Co.*, 568 So. 2d 687, 692 (Miss. 1990)).

> When we say that the trial court has discretion in a matter, we imply that there is a limited right to be wrong. At the very least the statement imports a view that there are at least two different decisions that the trial court could have made each of which on appeal must be affirmed. Indeed, if there are not at least two possible affirmable decisions, by definition the trial court is without discretion.

*Burkett v. Burkett*, 537 So. 2d 443, 446 (Miss. 1989). In a review for abuse of discretion, the appellate court will "consider whether the decision was one of those several reasonable ones which could have been made." *Id.* "A finding of abuse of discretion absent a definite and firm identification of clear error violates time-honored standard-of-review principles." *Ferguson v. Univ. of Miss. Med. Ctr.*, 179 So. 3d 1060, 1067 (¶ 31) (Miss. 2015).

## ANALYSIS

¶14. Our appellate procedural rules require that a "notice of appeal . . . shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from." M.R.A.P. 4(a). And a party in need of additional time to file the notice of appeal must turn to Rule 4(g) of the Mississippi Rules of Appellate Procedure, which allows additional time upon a finding of "excusable neglect."

¶15.    An excusable-neglect determination "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 397 (1993). The *Pioneer* Court then adopted the following four-part, excusable-neglect test:  (1) "the danger of prejudice to the [non-movant]," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant, and" (4) "whether the movant acted in good faith." *Pioneer Inv. Serv. Co.*, 507 U.S. at 395.  The four-prong *Pioneer* test has been applied by many other courts in analyzing similar motions (*see, e.g., U. S. ex rel. King v. Univ. of Tex.*, 544 Fed. App'x 490 (5th Cir. 2013); *Treasurer, Trustees of Drury Indus. Inc. Health Care Plan & Trust v. Goding*, 692 F.3d 888 (8th Cir. 2012); *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812 (5th Cir. 2007); *Locke v. SunTrust Bank*, 484 F.3d 1343 (11th Cir. 2007); *Pincay v. Andrews*, 389 F.3d 853 (9th Cir. 2004); *Local Union No. 12004, United Steelworkers of Am. v. Mass.*, 377 F. 3d 64 (1st Cir. 2004); *In re Schultz*, 254 B.R. 149 (B.A.P. 6th Cir. 2000); *San Juan City College, Inc. v. U.S.*, 75 Fed. Cl. 540 (Fed. Cl. 2007); *Active Glass Corp. v. Architectural & Ornamental Iron Workers Local Union 580*, 899 F. Supp. 1228 (S.D. N.Y., 1995)) and we hold that it is an appropriate guide for our courts.

¶16.    In the case *sub judice*, the chancery court entered the order for which an appeal is sought, an order denying a motion for a new trial, on October 1, 2013.  The thirty-day appeal period therefore ended on October 31, 2013.  The defendants below, appellees here, filed

8

their motion for an extension of time to file their notice of appeal on November 18, 2013. From her bench ruling, it is clear that the chancellor rendered a factually driven decision that addressed at least three of the *Pioneer* factors – danger of prejudice, length of delay and its impact on the proceedings, and the reason for the delay. She noted her sympathy for Varas, the attorney for the defendants who had suffered a death in the family, but she also weighed the interests of the other parties to the litigation. She noted that two of the plaintiffs are elderly and remarked on the length of the trial and pretrial proceedings. She noted that another attorney had tried the case for Varas's clients. She noted that Varas had filed a motion for a new trial on June 29, 2012, but did not call up the motion for a hearing. After the motion for a new trial stayed open for fifteen months, and Varas failed to obtain or take any steps to obtain a hearing on the motion, the chancellor entered an order denying it, as noted above, on October 1, 2013.

¶17.    Without citation to authority, the dissent contends that the trial judge erred by considering the fifteen-month delay caused by the defendants' failure to obtain a hearing on their motion for new trial, rather than considering only the shorter time period between the expiration of the appeal deadline and the filing of the motion for an extension of time. (Dis. Op. at ¶¶ 36-37). Equity  is not so tightly constrained. Again, an excusable-neglect determination "is at bottom an equitable one, taking account of *all relevant circumstances* surrounding the party's omission." *Pioneer Inv. Serv. Co.*, 507 U.S. at 395 (emphasis added). We have noted, "A court of equity considers results rather than the means by which

9

they are obtained." ***Hall v. Bowman***, 749 So. 2d 182, 184 (¶ 10) (Miss. 1999). Also, "One of the procedural maxims of equity is that equity looks to the intent, and will regard substance rather than form." ***Kemp v. Atlas Fertilizer & Chem. Co.***, 199 So. 2d 52, 57 (Miss. 1967). The defendant in the instant case did nothing for fifteen months to call his motion for a new trial for a hearing. The chancellor indicated in her order that she had ruled on the motion only because the clerk of the court had informed her the motion was still open. Given the chancellor's findings regarding the difficult and straining nature of the litigation below, she did not err in considering other delay caused by the defendants' inaction. "[E]quity aids the vigilant and not those who slumber on their rights." ***Matter of Last Will and Testament of Winding v. Estate of Winding***, 783 So. 2d 707, 711 (¶ 15) (Miss. 2001) (citing ***In re Estate of Davis***, 510 So. 2d 798, 800 (Miss.1987)).

¶18.    We again note the equitable nature of an excusable neglect determination, and we will not fault the chancellor for considering the deleterious effect on the parties of all of the delay – including the fifteen-month delay caused by the defendants' earlier, unexplained inaction. In ***In re Schultz***, 254 B.R. 149 (6th Cir. 2000), the case the dissent considers "the most persuasive and directly applicable," (Dis. Op. at ¶ 30), the Sixth Circuit focused heavily on the reason for delay prong. ***Schultz***, 254 B.R. at 153. With respect, we find little of use in ***Schultz***, because it does not contemplate the circumstances faced by the chancellor in the case *sub judice*, *e.g.*, the effects on the parties caused by a long delay that resulted squarely from a lack of diligence that predated any events that form the basis for the assertion of

10

excusable neglect. In other words, we cannot know what the ***Schultz*** Court would have held had the party attempting to show excusable neglect there also caused well over a year of delay in litigation with elderly litigants who had borne the weight of trying litigation.

¶19. In short, the chancellor in the case *sub judice* rendered a decision from the bench that considered at least three of the ***Pioneer*** factors. In truth, the chancellor's expression of sympathy for Varas could be read as a finding that the defendants did not act in bad faith. If so, she considered all four of the factors. In his dissent, Presiding Justice Dickinson touts his own, certainly lengthier and more detailed analysis as better than that of the trial judge, and he goes through great lengths to explain why he would reach a different result. As explained above, such is not our task when we review for an abuse of discretion. There was no error of law, and the chancellor's fact-based determination does not leave us with the definite and firm conviction that she erred.

¶20. We pause before closing to address the dissent's striking assertion that the fifteen-month delay caused by the defendants' failure to seek a ruling on their motion for a new trial should actually be weighed *against* the plaintiffs. (Dis. Op. at ¶ 37). The dissent would hold that the delay shows the plaintiffs were not prejudiced because, if they were being prejudiced, surely they would have sought a ruling on the motion themselves. Mississippi law and practice clearly put the onus on the movant to obtain a ruling on a pending motion. ***Billiot v. State***, 454 So. 2d 445, 456 (Miss. 1984). We cannot effectively agree to penalize parties who had no reason to know they were responsible for calling up the opposing party's

11

motion and, that because they did not do so, will face the Court using against them a failure that belongs squarely at the feet of their opponents.

¶21.     We affirm the judgments of the Pike County Chancery Court and the Court of Appeals.

¶22.     **AFFIRMED**.

     **RANDOLPH, P.J., LAMAR AND BEAM, JJ., CONCUR.  DICKINSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KING, J.  KITCHENS AND MAXWELL, JJ., NOT PARTICIPATING.**

     **DICKINSON, PRESIDING JUSTICE, DISSENTING:**

¶23.     I believe that Varas sufficiently demonstrated that the failure to file his clients' notice of appeal within the proscribed time was due to "excusable neglect," and I also believe the trial court erred when it denied Varas's motion for an extension of time to file a notice of appeal.  Because the majority holds otherwise,  I respectfully dissent.

¶24.     As the majority correctly notes, we generally review a trial court's grant or denial of a motion for an extension of time to file a notice of appeal for an abuse of discretion.[1]  But what the majority fails adequately to acknowledge is that, when such decisions are based upon a question of law, we review *de novo*.[2]  And because in this case we must determine the legal meaning of "excusable neglect," we are *not* bound to affirm the trial court's decision if "we are left with the definite and firm conviction that the lower court committed

---

[1] *In re Estate of Ware*, 573 So. 2d 773, 776 (Miss. 1990).

[2] *See In re Schultz*, 254 B.R. 149, 151 (6th Cir. BAP 2000) (citing *In re Hess*, 209 B.R. 79, 80 (6th Cir. BAP 1997)).

12

a clear error of judgment in the conclusion it reached."[3] Based on the discussion that is to follow, I am convinced that the court below committed a clear error of judgment by finding that Varas had failed to demonstrate excusable neglect, and by denying his request for an extension of time.

¶25. First, I believe the trial judge and the Court of Appeals majority were mistakenly persuaded that Varas's neglect was not excusable because, as the Court of Appeals put it, Varas's circumstances "were outweighed by the prejudice to the other side that would have arisen if the requested extension had been granted."[4] So, basically both the trial judge and the Court of Appeals balanced Varas's circumstances against prejudice to the other side.

¶26. I note that Rule 4(g) of the Mississippi Rules of Appellate Procedure makes no mention of prejudice, nor does it specifically require or authorize a trial judge to apply any balancing test.[5] That said, the majority—correctly in my opinion—directs our trial courts to utilize the balancing test articulated by the United States Supreme Court in its interpretation of the corresponding federal rule when determining what amounts to "excusable neglect."[6]

---

[3] *See* **Pincay v. Andrews**, 389 F.3d 853, 858 (9th Cir. 2004).

[4] **Nunnery v. Nunnery**, 2015 WL 4485648 (Miss. Ct. App. July 21, 2015).

[5] *See* M.R.A.P. 4(g).

[6] *See* **Pioneer Inv. Servs. Co. v. Brunswich Assocs. Ltd. P'ship**, 507 U.S. 380, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). Our Rule 4(g) is modeled after Rule 4(a)(5) of the Federal Rules of Appellate Procedure. *See* M.R.A.P. 4 cmts.

¶27.    On that note, I emphasize that, in *Pioneer Investment Services Co.*,[7] the Supreme Court  approved the Sixth Circuit Court of Appeals' four-prong test:  (1) "the danger of prejudice to the [nonmovant]," (2) "the length of the delay and its potential impact on judicial proceedings," (3) "the reason for the delay, including whether it was within the reasonable control of the movant, and" (4) "whether the movant acted in good faith."[8]

¶28.    Until now, this Court has not had the opportunity to address whether the illness or death of an attorney's family member constitutes "excusable neglect" within the meaning of Rule 4(g).  Federal courts, however, have been confronted with this particular issue, and those courts have held that—under such circumstances—the "excusable neglect" standard was satisfied, and that an extension of time was warranted.

¶29.    In *Local Union No. 12004*, the First Circuit Court of Appeals affirmed a district court's grant of a Rule 4(a)(5) motion for an extension of time to file a notice of appeal.[9]  In that case, the appellant's attorney failed to file a timely notice of appeal because he "was preoccupied by the need to care for his infant son, who was severely ill."[10]  The appellant's attorney filed the motion for an extension fourteen days after the thirty-day time period had

---

[7] *Pioneer Inv. Servs. Co.*, 507 U.S. 380 (1993).

[8] *Id.*

[9] *Local Union No. 12004, United Steel Workers of America v. Massachusetts*, 377 F.3d 64, 72 (1st Cir. 2004).

[10] *Id.*

14

expired.[11] The Court of Appeals, after reasoning that "given the relative brevity of delay, the attorney's plausible and uncontested explanation for it, [and] the absence of any discernible prejudice," concluded that the trial court had not erred in granting the appellant's motion for an extension of time.[12]

¶30. Similarly, in **San Juan City College**, the United States Court for Federal Claims granted a motion for an extension of time to file a notice of appeal, which the appellant filed thirteen days after the appeal period had expired.[13] There, the appellant's attorney "became overwhelmed by the illness of her father, the requirements as a care taker, and the death of her father."[14] In granting the motion, the court reasoned that the "danger of prejudice . . . is minimal," and that the "delay is unlikely to be excessive since plaintiff's counsel has stated that she is prepared to proceed virtually immediately."[15]

¶31. Considering the factual circumstances and procedural posture in the instant case, I find **In re Schultz**[16] to be the most persuasive and directly applicable. In **Schultz**, the debtor's counsel filed a motion for an extension seven days after the appeal period had

---

[11] *Id.*

[12] *Id.*

[13] *San Juan City College, Inc. v. U.S.*, 75 Fed. Cl. 540, 543 (2007).

[14] *Id.*

[15] *Id.*

[16] *In re Schultz*, 254 B.R. at 149.

expired and argued that he could demonstrate "excusable neglect" because his wife had been "diagnosed for the second time with ovarian cancer and was undergoing chemotherapy."[17] The attorney had struggled to help his wife cope with "severe side effects from chemotherapy" as she had been "hospitalized several times . . . and suffered extreme psychological and emotional distress."[18] Additionally, he "was the sole caregiver for his wife, accompanying her to medical appointments and chemotherapy treatments . . . [and] was responsible for administering her medication," and as a result, he could devote "only part-time hours to his *solo* law practice during the appeal period."[19] The bankruptcy court *denied* the debtor's motion for an extension, finding that such circumstances did not constitute excusable neglect.[20]

¶32.    The debtor's attorney appealed to a panel for the Sixth Circuit Court of Appeals.[21] In analyzing the issue, the Court reasoned that the attorney "was suddenly and unexpectedly preoccupied with the physical and psychological care of his extremely ill wife during the period in question," and noted that "other courts have determined that excusable neglect

---

[17] *Id.* at 152.

[18] *Id.*

[19] *Id.* (emphasis added).

[20] *Id.*

[21] *Id.* at 153.

16

includes sudden death, disability or illness of counsel or the party."[22] According to the Court, "because of the severity of the illness at issue and the close familial relationship . . . the facts of this case are analogous to a situation in which the attorney is the one who is seriously ill."[23] The Court also emphasized that "there is certainly no finding that the circumstances were 'within the reasonable control of the movant.'"[24] Ultimately, the appellate court reversed the denial of the motion for an extension of time and specifically held that "we are . . . left with a 'definite and firm conviction that the [bankruptcy court] committed a clear error of judgment,'" and that "the bankruptcy court *abused its discretion* in determining that the Debtor's failure to timely file the request for an extension of time to appeal was not attributable to excusable neglect."[25]

¶33. I find compelling the fact that the majority cites the ***Pioneer*** test but fails to conduct a thorough analysis, actually applying the factors to the facts of the instant case. Instead, the majority merely points to some concerns espoused by the chancellor that *could* indicate that she was considering these factors. I am unconvinced.

---

[22] ***Id.*** at 154 (citing ***In re Mizisin***, 165 B.R. 834 (Bankr. N.D. Ohio 1994) (citing ***Evans v. Jones***, 366 F.2d 772 (4th Cir. 1966))).

[23] ***Id.***

[24] ***Id.***

[25] ***Id.*** at 155.

¶34. With the above-discussed cases in mind, and in *actually* applying the aforementioned four-prong balancing test to the instant case, it seems clear to me that Varas sufficiently demonstrated that his failure to file a timely notice of appeal was due to "excusable neglect."

### A. Danger of Prejudice to the Nonmovant

¶35. Both the trial court and the Court of Appeals went astray in their consideration of prejudice. The Court of Appeals erroneously considered the duration of the underlying litigation, noting that it had been going on for years. The prejudice factor requires an analysis of no more than the prejudice occasioned by granting the extension of time. Similarly, the chancellor noted that the litigation "has prolonged through this Court for several years," and reasoned that she "went to great lengths to allow the litigants to present their cases . . . [and she ruled on] numerous motions, hearings, and a very extended trial."

¶36. Prejudice resulting from the duration of the underlying litigation is *not* what this factor contemplates. Instead, the danger of prejudice to the nonmovant in this context refers only to the potential prejudice that would be caused by the delay of filing the notice of appeal. For example, a prevailing defendant, relying on an appellant's failure to file a notice of appeal, might commit to other purposes the resources that were available to satisfy a judgment.

¶37. But here, when considering this factor in the appropriate manner, I am unable to find any discernible prejudice to Paul and Glenda. Nothing indicates that they relied in any way on an assumption that David and Jené would not pursue an appeal. In fact, it appears to be quite the contrary. While it is true that Varas did not request a hearing for fifteen months

18

after he filed the motion for a new trial, it is noteworthy that Paul and Glenda made no attempt to have the motion resolved. And while it is also true that Paul and Glenda had no duty to do so, still, the obvious must be considered: If Paul and Glenda truly felt they were being prejudiced by the delay, they certainly could have taken some step to mitigate the prejudice. Instead, as the time passed, they sat silently by without protest.

¶38.   Furthermore, the record reflects that Varas informed Paul's and Glenda's counsel that he "had a tragedy in the family . . . and [was] unable to address any circumstances [of the appeal at that time]," so Paul and Glenda certainly were aware that David and Jené intended to pursue the appeal. Based on these undisputed facts, any prejudice to Paul and Glenda for the delayed notice of appeal was minimal, if at all. And applying the correct analysis, limited to prejudice associated with the delay in filing the notice of appeal, any finding to the contrary would be manifest error, so this factor weighs in favor of a finding of excusable neglect.

B.      *The Length of the Delay and Its Potential Impact on Judicial Proceedings*

¶39.   This factor also weighs in favor of permitting David and Jené an extension. Varas filed the motion for an extension of time a mere two days after his brother's funeral, and approximately nineteen days after the appeal period had expired—very similar to *Local Union No. 12004*, in which the motion was filed fourteen days after the appeal period had expired, and *San Juan City College*, in which the motion was filed thirteen days after the time for appeal had expired. And as Varas made clear at the hearing, David and Jené are

19

ready to proceed with the appeal immediately. The record suggests no adverse impact on judicial proceedings.

### C. The Reason for the Delay

¶40. Federal courts agree that "'the four *Pioneer* factors do not carry equal weight; the *excuse given* for the late filing *must have the greatest import*.'"[26] After careful consideration of this factor, I am of the opinion that it weighs quite heavily in favor of David and Jené.

¶41. Varas's brother was involved in a tragic car accident which left him in a coma in the ICU at a hospital in Greenville, South Carolina—a long way from Varas's practice in Mississippi. And, like the movant in *Local Union No. 12004*, Varas was "preoccupied by the need" to be with, and care for, his brother, "who was severely ill." As Varas admitted at the hearing, during this time he "was not paying attention, nor did [he] feel like [he] needed to pay attention to the demands of the law practice during that time."

¶42. Similarly, like the movant in *San Juan City College*, Varas "became overwhelmed by the illness of [his brother], the requirements as a caretaker [for his brother], and the death of [his brother]." Varas traveled from Mississippi to South Carolina and from South Carolina back to Mississippi for several weeks. During that time, according to Varas, he

---

[26] *San Juan City College*, 75 Fed. Cl. at 542 (citing *Graphic Commc'ns Int'l Union, Local 12-N v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5–6 (1st Cir. 2001) (quoting *Hosp. del Maestro v. Nat'l Labor Relations Bd.*, 263 F.3d 173, 175 (1st Cir. 2001) (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)); *see also Treasurer, Trustees of Drury Indus., Inc., Health Care Plan & Trust v. Goding*, 692 F.3d 888, 893 (8th Cir. 2012); *Silivanch v. Celebrity Cruises, Inc.*, 333 F. 3d 355, 366–67 (2nd Cir. 2003).

"became the patriarch [of his family] and was there [in South Carolina] to actually . . . make the decision whether to let [his] brother pass away or not."

¶43.    And like the movant in **Schultz**, Varas is a solo practitioner, unable to delegate his work responsibilities to others during this difficult time. Varas was "suddenly and unexpectedly preoccupied" with the tragic circumstances surrounding his brother's car wreck and medical condition. And "because of the severity of the illness and the close familial relationship," as Varas's *brother* was in a *coma* in the ICU, I am persuaded by **Schultz** that "the facts of this case are analogous to a situation in which the attorney [Varas] is the one who is seriously ill."[27] Further, no one asserts that the circumstances in which Varas found himself were within his control.

¶44.    Simply put, David's and Jené's counsel clearly found himself in extraordinary circumstances which were completely beyond his control. This Court sometimes forgets that our extremely high expectations for attorneys do not comport with reality—the reality that attorneys are humans and will sometimes, on rare occasion, be overwhelmed by extraordinary personal or familial circumstances which understandably will take precedence over court-imposed deadlines. I note briefly that the majority takes issue with our reliance on **Schultz**, contending that this case is not helpful because it did "not contemplate the circumstances faced by the chancellor in the case *sub judice*."[28] While this is technically correct, the

---

[27] *See* **In re Schultz**, 254 B.R. at 154.

[28] Maj. Op. at ¶ 18.

majority simply misses the point. It baffles me how the majority takes issue with the court in **Schultz** relying heavily on this prong when that is exactly what courts have been directed to do—as "the *excuse given* for the late filing *must have the greatest import.*"[29] Based on the foregoing discussion, I believe that Varas's reason for the delay was more than sufficient, and consequently, this factor weighs in favor of permitting David and Jené an extension.

       *D.     Whether the movant acted in good faith.*

¶45.    Lastly, I consider whether David and Jené acted in good faith. Nothing in the record indicates anything to the contrary. Neither Paul and Glenda nor the trial court disputed the factual circumstances propounded by Varas. I can hardly conclude that Varas acted in anything but good faith in requesting an extension given the undisputed extraordinary circumstances in which he found himself. So this factor too, weighs in favor of allowing David and Jené additional time.

¶46.    After applying the **Pioneer** balancing test to the factual circumstances in the instant case, I am convinced that Varas's failure to file a timely notice of appeal for his clients was due to "excusable neglect," and that a finding to the contrary, under the particular facts of this case, was manifest error. I have no doubt that there will be cases in which the **Pioneer**

---

[29] *See* **San Juan City College**, 75 Fed. Cl. at 542 (citing **Graphic Commc'ns Int'l Union, Local 12-N**, 270 F.3d at 5–6 (quoting **Hosp. del Maestro**, 263 F.3d at 175 (quoting **Lowry**, 211 F.3d at 463)); *see also* **Drury Indus.**, 692 F.3d at 893; **Silivanch**, 333 F. 3d at 366–67(emphasis added).

factors weigh against a finding of "excusable neglect," but, in my mind, the instant case is simply not one of those cases.

¶47. I note briefly how the majority attempts to support its decision on the grounds of "equity." Though I do not quibble with the majority's reliance on the principle of equity, I seriously question whether the result it reaches is actually an "equitable" one. The majority states that "a court of equity considers *results* rather than the means by which they are obtained."[30] Though I firmly believe in this statement of the law, I fail to see how it supports the majority's conclusion. The majority's *result* here is to deny David and Jené an opportunity to appeal merely because their counsel acted with simple negligence. How can this result be an "equitable" one, especially when that simple negligence was due to a horrific family tragedy which—no one can reasonably dispute—consumed Varas's world during that time?

¶48. Moreover, I want to emphasize again that the majority, in my opinion, applies an incorrect standard of review. The majority simply finds that the chancellor did not abuse her discretion. If abuse of discretion were truly the applicable standard of review, I might be constrained to agree—but it is not. What constitutes "excusable neglect" is a question of law, which we review *de novo*.

---

[30] Maj. Op. ¶17 (citing ***Hall v. Bowman***, 749 So. 2d 182, 184 (Miss. 1999)) (emphasis added).

¶49. Based on the foregoing discussion, I would hold that Varas satisfied the "excusable neglect" standard found in Rule 4(g) of our Rules of Appellate Procedure and that the trial court erred in finding otherwise. Consequently, I would reverse the judgments of the Court of Appeals and the trial court and would remand the case to the chancery court with directions that it allow David and Jené additional time to file their notice of appeal.

**WALLER, C.J., AND KING, J., JOIN THIS OPINION**.